Manners v. Officer Cannella et al. Good morning. Good morning. May it please the court, my name is Wendell Locke and I'm here on behalf of the appellant Livingston Manners. Based on the arguments raised in the briefs, including the supplemental briefs, we respectfully request that this court reverse the district court. We're asking that officers Cannella and Savion are not shielded by the doctrine of qualified immunity. We're asking that the case against the city, the false arrest case, be reinstated and we ask that this case be remanded back to the district court and tried before a jury. Before we get into the issue, let me ask you a question. I've read the briefs and I'm thoroughly, as part of the record, I'm Mr. Manners was parked in the swale, as I understand it, off the road. Yes. When the police officer came by. Yes. Did the officer approach him from the rear or from the front? From the rear. From the rear? Yes. And passed him? Yes, sir. Went up to an intersection? Yes. What happened after that? Explain factually what happened after that. Mr. Manners sitting in his car, watched the officer drive through the stop sign and keep going straight ahead. At that point, Mr. Manners pulled up, pulled out and drove to that same stop sign, made a complete stop, made a left turn. Okay, thank you. After making that left turn, that is when the officer made a U-turn, then made a right turn. Okay. Very much. Now, the good news in this case for Mr. Manners is a lie, because based on the facts and what transpired, this could have gone much worse than merely getting beat up by the police and arrested. And the case boils down to two, at the core issues, the arrest, which was decided at the stage of summary judgment, and as the law provides, the Supreme Court, this court has said repeatedly, the law in all inferences are to be viewed in the favor of the non-moving. That would be, in this instance, Livingston Manners. And according to Livingston Manners, he did not violate any traffic laws or any other laws, that while being detained, he merely inquired how long did Officer Cannella intend to take, because he was going to work. Let me ask the question this way. Yes, sir. Let's go beyond the initial question of whether he ran the stop sign or he didn't. Hold that aside, and I understand there's a dispute of fact about that. The officer sees Manners drive. He turns his lights on, his siren on, and he hails the car over. Manners does not obey the command of the officer to stop. He at least for 175 yards before he stops, and he stops only because he sees a gas station, and he figures there are cameras in the gas station that will record any subsequent encounter. That's a fair statement, taking the evidence in a light the command to stop. He doesn't stop immediately. He continues to drive by his account for at least 175 yards and for 15 seconds. 15 seconds. That's his account. Yes. He's going about two football fields, about three city blocks. He sees a gas station. He pulls in, and then he stops, and then the other things happen. That's a fair statement of the evidence in a light most favorable to the non-moving party Manners, right? Yes, I believe that's pretty accurate. We could amplify it. Is that also the gas station where he usually stopped to get snacks? Yes. He goes to that gas station every day that he goes to work. He knew it was lighted, and that's where he usually bought his snacks. Yes. He knew it was open. He knew it was open. Let me ask you, why couldn't the police officers stop him and arrest him for violating the command to stop his car? Is he free to decide how far he's going to go before he complies with the order? Or is your position, he doesn't have to comply with the order at all because the cop was wrong to have stopped him in the first place? I do believe the officer was wrong to have stopped him in the first place. Is that sufficient to vitiate probable cause that otherwise would exist to arrest him for fleeing? As the statute says, it's unlawful for the operator of any vehicle having knowledge that he or she has been ordered to stop such a vehicle by a duly authorized law enforcement officer, willfully refuses or fails to stop the vehicle in compliance of the officer, violates this section, and commits a felony in the third degree. That's what the statute says. Yes, Your Honor. Wouldn't an officer believe, based on those facts, that there was a violation of 316.193.5.1? Well, to respond to your question, Your Honor, that's one of the problems with the statute. See, I've searched all the cases and there were no cases where a person was arrested for fleeing and eluding for driving 15 seconds. And I think it would depend upon where the traffic... The length of the distance would also be material. Yes. And there are no cases where a person drove... So how would an officer be put on clear notice that he couldn't arrest him for violating that? Is there anything that would have told him, looking at the law, that he's got to go 500 yards before I can arrest him, or 1,000 yards, or a mile? If I put my lights on, I put the siren on, I expect that whoever's driving will pull over. If he doesn't pull over immediately, is there something in the statute that would have warned an objectively reasonable officer to know that I've got to give him X number of feet and Y amount of time before I can pull him over? That's one of the problems with the statute, Your Honor. I mean, the statute is facially unconstitutional because the courts, state courts and federal courts, with Judge Steele over in Fort Myers have interpreted the statute saying that it does not require a lawful stop of... Let me ask the question this way then. Has any case... For qualified immunity purposes, we can only look at the law for three places, either from the Supreme Court of the United States, the Supreme Court of the highest court of the state, or the 11th Circuit. Was there any 11th Circuit law, U.S. Supreme Court law, or the law coming out of the state, in this case, I guess we're talking about Florida, that said this statute was unconstitutional because it was void for vagueness? My search of the law, I have not found any law that says that this statute is facially unconstitutional or unconstitutional because of vagueness. Okay. If that's the case, then how would an objectively reasonable officer be put on notice? Because that's the standard the Supreme Court tells me I've got to apply. Well, I mean, what we do have is a question where how many seconds, how many feet could a person ultimately be charged with fleeing and eluding? And I would argue that. And in fact, I've joked with my law partner about this issue. So when a person's lights come on, it is the case that even if you're on I-95, that you should just slam on your brakes and stop, cause mayhem, or should you try to pull over safely to avoid other accidents and so forth. That's one of the problems. But the problem here is it was 2 a.m. There was no reason why he couldn't pull over immediately. Well, yeah, in fact. Other than he was worried. He was worried that he was going to have a problem with these cops. They were going to harass him and hassle him, and that's why he wanted to keep going until he could find a gas station with some cameras. I understand that, but all I'm asking is whether or not there's any clearly established law that would have put an officer on notice that he couldn't find a violation of that section. No, all of the case law, it was much more time and much more distance. The law does not say how much time, how much distance. And thus, even reading the statute, and the fact that a law enforcement officer can direct the drive of a vehicle to stop without having reasonable suspicion or arguable probable cause of violation. And the 11th Circuit, the SCOP opinion and the POPL opinion, both have said that empowering a law enforcement officer to stop a vehicle, without having either reasonable suspicion or arguable actual probable cause of a criminal or traffic offense, violates that driver's Fourth Amendment right to be free from unconstitutional seizures. The videotape we have has no audio. I take it that there is no videotape with audio. Of the driving? No, of once it's in the gas station. There is no audio. I've looked at the videotape of what happens once the car is stopped, the interaction. Yes, ma'am. There is no audio, and I assume there is no tape with audio. That is correct. I was just curious about that, why the audio is not picked up. Is that common, or do you turn off the audio, or there's no audio ever? I was just curious. Well, this was a surveillance video at a gas station. I see. Then my next question is, it looks like when he first stops him there, that he's not going to make a custodial arrest because he doesn't make one when he stops him. It looks like he gets a license, they talk, and your client gets out of a car. Yes. And it looks like that something is exchanged there, some words are exchanged, and then your client goes back into the car. Yes, ma'am. And then the officer lunges in the car after him. Yes. It looks like he really wasn't arresting him or making a custodial arrest, and just one possible scenario, because of not stopping for three blocks, but because of something your client said. Right. What is the interchange there? According to Livingston Manors' versions of the facts, what's governed says he merely asked the officer, hey, how long is this going to take because I'm trying to get to work? The officer says you're under arrest, grabbed him, and then the flogging began, began beating him down. But the videotape shows your client gets back in the car, and there's no flogging until your client gets back in the car and the officer comes at him. So he must have said, I'm going to arrest you. So your client admits that he said, I'm going to arrest you outside the car? Apparently, when they were standing with the door open, the officer, my understanding of the facts is the officer says, you're under arrest. Mr. Manor says, for what? He goes back into his car. So he goes back into the car after he's told he's under arrest. Yes. That explains why the officer goes into the car and pulls him out. Well, he doesn't just pull him out, he goes into the car and beats him up first. He interacts with your client physically in the car. Yes. That's where it starts, yes. But that explains what's happening. He's been told he's under arrest outside the car. Right outside of the car door. When you watch the video, you'll see the car door and you'll see Officer Canella standing furthest away from the car. Mr. Manor is standing closest to the entry of the car. And that's when my understanding of the facts is he's told, you're under arrest. And Mr. Manor falls back into his car and says, for what? But he's not pushed back in the car in the video. No. Your client really just gets back in the car in the video. Well, he falls back into his car. He was not shoved into his car. Okay. He was not shoved into his car. Thank you. You answered my question. Ultimately, we had a man going to work, didn't violate any traffic laws, didn't violate any other laws. A mere inquiry led to the pummeling. He complied with directives. And at this stage in summary judgment, the court must assume that the facts are presented by the non-movement of Mr. Manor. And based on those arguments, because I know I'm out of time, we respectfully— That's all right. You were answering our questions. Thank you, Your Honor. You've reserved your full three minutes for rebuttal. Yes, Your Honor. Thank you. Good morning. Good morning. May it please the Court, Jeffrey Marks on behalf of Officers Cannella and Savillon. My co-counsel representing the City of Hollywood is also here, and we split our time 10 and 15. To address Judge Hull's question about what the video portrayed and what the interaction between Officer Cannella and Mr. Manors, I went and looked at the undisputed statement of material facts filed by the defendants, and it appears that there was an exchange between Officer Cannella and Mr. Manors at the gas station when Mr. Manors was outside the vehicle. According to Docket Entry 57, page 4, Manors is told to get back into his car, and there's a verbal exchange, and Manors proceeds to refuse to obey his commands, Officer Cannella's commands, in which case Officer Cannella reaches in and then tries to effectuate the arrest, and then there's the struggle in the car, and then it continues. That's the officer's account, or is that Manors' account? That's Officer Cannella's account. What about Manors? What does he say? Before we get into what happened at the car, can I ask you the same question I asked earlier? Yes, Your Honor. Tell me your version of what happened factually after the officer passed. As I understand it, the officer passes Mr. Manors, who's sitting in his car at 2.30 in the morning, and sees he goes, continues in the direction through the intersection, and sees in his rearview mirror Mr. Manors not stop at a stop sign. Explain to me where the cars are. How did that happen? I believe Officer Cannella's car is in front of Mr. Manors' car, having either gone through or in the intersection, and he has to look back in his rearview mirror. The officer's gone through the intersection. That's correct. I believe that's what occurred, Your Honor. And so it's clear that Officer Cannella did not directly see. He sees what occurs looking back through his rearview mirror. I'm confused. In his deposition, this is what he says, the officer. I pulled up to the stop sign, stopped, pulled to the stop sign, and through my rearview mirror observed the traffic infraction, which was very abrupt and sudden. Okay, what do you mean by that? As I pulled through the stop sign, a vehicle came flying past me and made a left turn, disobeying the stop sign. You mean that Mr. Manors came by him in the intersection, passed him, and made a left turn? That appears to be what Officer Cannella's testimony is. It's clear, though, that he says, I observed him through my rearview mirror. So he doesn't actually see. He doesn't directly see, but he sees. But I think that that's the basis of his initial probable cause to stop him. So let's talk about that. Let's start with the initial encounter. You've got three pieces to this puzzle. First, the initial stop, did he or didn't he stop, and could he pull him over for that? Second, whether he could or he couldn't, did he flee when the lights went on? And third, once the stop occurs and they're in the gas station, this incident escalates into a really serious set of circumstances. But let's start with the stop, because as I understand the district judge, the district judge says there's probable cause to arrest for the stop, right? Yes, Your Honor. Okay, that's wrong, isn't it? If you look at it from the perspective of it being a fact dispute, in other words. Let's start with that. And Mr. Manners says unambiguously, if I have it right, I didn't go through that stop sign. I know the officer said I did. He's either mistaken or lying. I didn't go through that stop sign. That's what he says, right? Correct, Your Honor. And the cop says, no, that's not the way it happened. He ran a stop sign. Don't I have to take for purposes of summary judgment in qualified immunity, the officers reject the officer's account and accept Mr. Manners' account? The answer is yes, Your Honor, because there's clearly one version of events that says that there was a stop sign and one version of events that says there wasn't. Okay, so the bottom line is that wouldn't form a basis for. . . The district court is wrong. The district court is not wrong in its overall analysis. Again, I want to just break it into pieces. There are three pieces to this puzzle. That's where I started. Right. To the extent the district court held that there was probable cause to arrest Mr. Manners for running a stop sign, that's wrong at least for one reason, is that factually there's a dispute and the summary judge is not entitled to resolve that dispute. She says in her order that she is not resolving the issue. But how could you find probable cause if you accepted Manners' account? Well, that's where she goes to the mistaken belief analysis. Okay, so maybe he was wrong, but in good faith he did it. That's correct. Let me ask a slightly different question. Let's assume all of that's true. Isn't running a stop sign a civil traffic infraction rather than a misdemeanor criminal infraction under the law that governs here? And if that be the case, what authority would there be to arrest anyway, even assuming it was true that he ran a stop sign? I can't answer the question. I can. And I can tell you that it's a civil infraction, not a misdemeanor. Assuming that's the case, what you're left with is, well, maybe he reasonably could have thought that it was like some other modest traffic violations that are misdemeanors. You hit a horn, without a good reason, that's a misdemeanor, but it carries the right to actually arrest. But running through a stop sign I don't think is a criminal offense. Therefore, I'm not sure that you had a basis to arrest on that ground. But then we move forward in the timeline. Okay, so let's assume for the purpose of my question that as to the initial transaction, he had no basis to stop and arrest. One, because there's a dispute about whether he ran through the stop sign, and two, because you couldn't arrest in any event for the civil violation. There's an issue of clearly established law, but that wouldn't answer the facts. So we get to the second transaction. Let's assume then that he wrongfully was pulling him over by putting on the alarm and the siren and the lights and all that business. Was the plaintiff obliged to stop when the officer asked him to stop, even if the cop did not have a lawful basis to pull him over in the first place? The answer is yes, and the district court addressed that issue in its order at page 11. The district court said in its order that a court may not employ, in quotation marks, hindsight to determine whether a prior arrest was made on probable cause, citing the Lozman case, and, in quotation marks, a driver is required to stop regardless of the lawfulness of the police decision to direct the vehicle to stop, citing the DeRosa case from the Middle District, which was affirmed in part by this court. So when Officer Cannella turned on his lights, there was clearly a statutory violation by Mr. Manners in not pulling over right away, and the failure to pull over gives Officer Cannella probable cause, or on the more objective standard of arguable probable cause, to arrest Mr. Manners. So if I have it right, and maybe it is right, but I'm asking the question, if a police officer puts his lights and siren on and pulls somebody over for no good reason, it doesn't have a basis, and the person does not obey immediately that command, he can be busted for that? The statute, I believe, says that when an officer is operating his vehicle and a person has been ordered to stop such vehicle by a duly authorized law enforcement officer and willfully or refused or fails to stop the vehicle in compliance with such order, then there's been a commission of a crime and a third degree felony. And in this case, Your Honor, regardless of the factual dispute and the initial moment of probable cause in terms of running the stop sign, at that point, Mr. Manners was supposed to pull over and should have pulled over. Is there any requirement? The answer was made that I did pull over. I pulled over in 15 seconds into a gas station. And in the Lund v. Rickoff? Is that a reasonable defense to say the officer was a little quick on the trigger? No, Your Honor, it's not. And it doesn't create a factual issue because the officer, I see I'm over my time. That's all right. You take your time. The officer was effectuating an enforcement of a criminal statute for which at 2.30 in the morning Mr. Manners did not immediately pull over. And he admits that he did not immediately pull over. And he admits his, he identifies his reasons, but you have to go into Forget the reasons for a moment. Taking the facts in the light most favorable to Mr. Manners as we are required to do at this stage in the proceeding. You have to accept his account. His account is he continues to go forward notwithstanding the lights and the siren for how long? Mr. Manners says I think 175 or 176 yards. He does a mathematical computation. And I believe he comes out with about 15 seconds. Apparently there's no issue. He didn't speed up or try to get away. There's no evidence that he attempted to do anything other than did not pull over and of his own volition didn't pull over in the gas station, immediately in the gas station, but went to his pump of choice. He says he was traveling at 25 miles an hour so he didn't speed up. That's correct. Here's my question. I looked at the officer's testimony. It seems to me that he admits he didn't cut on his blue lights and maybe that he first saw him and not run the stop sign. He doesn't put on his blue lights until Manners is in front of him, correct? Correct, Your Honor. Okay. So if you look at, I looked at a map there of the three blocks. Okay, because the gas station's on the corner at the turn, right? Correct, Your Honor. Okay. And the stop sign is three city blocks, right? Yes, Your Honor. So necessarily under the officer's own testimony, he's already through the stop sign, okay, and he's moving. He never says he stops. He says Manners comes around him and he says, I can't remember the exact testimony, but he says he watched him and then he put on his blue lights. See, I'm not so sure Manners and the officer don't agree about the 15 seconds. I know Manners elsewhere, I mean, excuse me, the officer elsewhere says it's two to three minutes, which is logistically proven wrong by just you can look at the distance. It can't be two to three minutes. Correct. Going 25 miles an hour or any speed. Of course, the officer said he's going, thought he was speeding. No, actually, Manners says he decreased his speed. But in any event, I don't understand when the blue lights went on. So if he's already through the stop sign, that is the officer, Manners has got to go around him before he, Manners goes around him before he puts on the blue lights, correct? Correct. Okay. There's not really much left, space left except to turn in. I mean, it's right at the corner, right at the gas station. But that's why the courts have held that there is no case that says that the statute is unconstitutional. I'm not worried about that. I'm worried about under the light most favorable to Mr. Manners, the gas station is just right there. Except that the failure to stop immediately is what the statute. But he doesn't have to stop immediately until the lights are on, correct? Correct. Because the statute says something about lights, I think. Correct. Okay. So when did the lights go on? How close is he to the gas station under the officer's theory when he puts the lights on? Well, if you're taking the light, we have to say that it's 15 seconds. Right. According to Mr. Manners. Manners' account, let's forget the officer's account. Manners' account, and I've asked the question of counsel for the plaintiff, Mr. Locke says, and the record reflects that Manners says, from when the lights first go on to the time, he says, I didn't stop immediately. He doesn't dispute that. He said it took me 175 yards and 15 seconds to pull over. I did not stop immediately. I was waiting to go into this gas station where I knew they had these cameras. That's his account. Is that correct? That's a fair characterization of his account, except that the court doesn't go behind the violation. The violation did occur here. There was probable cause, or even arguable probable cause, because we also have that secondary standard and analysis, which is what would reasonable, the objective standard of whether the police officer is acting or objectively, reasonably, regardless of whether the officer's intent or motivation. So when Officer Manners, I'm sorry, Officer Cannella turns on his lights, Mr. Manners, at 2.30 in the morning, was required to pull over immediately, and he offers his reasons for why he didn't. Get back to Judge Howell's question. It really gets to be very, very confusing, and I don't think there's even 15 seconds involved when the officer's behind Manners, according to their testimony. What does the officer say? I pulled through the stop sign. He pulls through it. He goes through the intersection. A vehicle came flying past me and made a left turn, which doesn't seem to meet any reasonable test, but anyway, that's what he says. Okay, so Mr. Manners passed through, he made the left. After I passed through it, he's talking about the intersection, he passed through the stop sign behind me and made a left turn. Okay, is that clear? Yes. I turned around, so I guess that means he went through the intersection and had to turn around and come back. I believe he made a U-turn in the intersection, Your Honor. Then he would have had to make a right turn to get on the same street that Manners was on. Correct. I turned around, caught up to Mr. Manners, that takes some time, and activated my emergency lights and sirens. I don't know how many seconds you got going there, but it's obviously 10 seconds? Okay. Five seconds? But that doesn't create a factual issue and a factual dispute because it is undisputed that Officer Cannella turned his lights on and Mr. Manners did not pull over and did not follow the law. That's what I'm asking you. Is the motor supposed to lock all four wheels? Just slam on the brakes and stop in the middle of the road? No, you're supposed to pull over to the side of the road once an officer puts on his lights. Taking the officer's testimony, it looks to me like you're talking about five to 10 seconds when the officer was behind him with the lights on and the siren on. Taking the officer's testimony. And Mr. Manners did not pull over to the side of the road. Five or 10 seconds. He did not pull over to the side of the road, Your Honor. He pulled into a gas station, did not stop at the first point possible in the gas station at 2.30 in the morning and pulled to his... It cannot be the law you've got to stop at the first point. Right when you pull into the gas station, you can't move up. I mean, that doesn't make sense. Let me ask you this. When you make the left turn, you're at the gas station, correct? Yes, Your Honor, I believe so. Okay. And it seems to me one reading of these facts that's possible when you take pieces together is the blue lights don't come on until he's at the intersection where he makes the left turn. Why am I wrong that that's not one potential reading of the facts here? That's certainly a way to review the facts. Okay. So that when he takes a left turn, you're at the gas station. It's on that left corner, right? I believe so. It's on the far corner, actually. But when you take a left turn, you're at the gas station. I believe that's correct, Your Honor. But that is not the basis for splitting out and saying that there isn't probable cause or arguable probable cause to arrest, to stop Manners and then arrest him. And then, of course, we have the third part of the incident, which Judge Marcus was referring to, which is what occurs at the gas station. Right. But you would concede as to that, that if they had no basis to arrest him for running a stop sign and he complied promptly with the command to pull over, then the force used to effectuate arrest that they couldn't effect lawfully would be unlawful as well, wouldn't it? Or at least arguably unlawful. Well, I think the excessive force to... then the force used to effectuate the unlawful arrest would be excessive, wouldn't it? I don't know if it would be excessive. That would be a fact. Well, that's the claim. And that would be a fact. Wouldn't it be excessive to use any force to subdue someone that you had improvidently pulled over? Not if they engage in the resisting arrest. Well, if the guy took a swing at him, that'd be something else. And that's what occurred here, which is that even if you take that as the view of the evidence, is that there wasn't a basis for a stop, either through the stop sign... Let's assume, for the purposes of the question, there was no foundation for a stop one pursuant to running through the stop sign and no basis for pulling him over for fleeing the command and arresting him for that. Let's just assume that that's the case. So then we get to the circumstance where they're in the gas station. He's pulled over and he gets into a fight with the cops. To the extent the police used force, wouldn't the force necessarily be excessive because there was no basis to pull him over in the first place? I don't agree because... Okay, tell me why not. Because the court also looks at what occurred in the stop itself. And by stop, I mean the actual custodial stop in the gas station. And in that aspect of the timeline or the series of events, Mr. Manners and Officer Cannella get into a fight. And there's a statement by Mr. Manners, I did not touch or strike the officer. And the video shows that, in fact, he did. And that's pointed out by the district court. And so what you have at that point are the additional charges, the additional criminal violations of resisting arrest, battery on a law enforcement officer, and attempted homicide on a law enforcement officer. So that is the third component of giving rise to defeating the excessive force. What is there that even remotely suggests an attempted homicide? Well, in the criminal case, there's no dispute that Mr. Manners was not convicted of any of the things that he was charged with. No, no, but I'm not asking, but what evidence, taking it even the light most favorable to the officer, suggested that there was an attempted homicide here? I can't get behind the mind of the information that was filed against him. No, but if I take all of the facts as Cannella laid them out, What did the defendant do that could possibly be characterized as an attempted homicide on an officer? There was a fight, and there was fists thrown, punches were thrown, and Officer Cannella felt that he was in fear of his life. And so he believed that this larger person could have put him in imminent threat of danger, including homicide. And that's what he was cited for, that's what the information included, but... I'm looking at the affidavit the officer filed. I had forgotten to ask this, because I couldn't figure out where everybody was exactly on the street. I was confused, like Judge Fay, whether he was time in the rear view or what. Because here is the complaint. It says, the defendant traveled on Plunkett Street when he observed my police vehicle. The defendant disobeyed the stop sign at South 26th Avenue before exiting a left south on South 26th. See, that stop sign is the stop sign where you turn in the gas stations there. I know that's not the stop sign we've been talking about, but that's the stop sign the officer says he ran when he filed the complaint. Is that not correct? I believe you're correct, Your Honor. Okay, so under the complaint, he's gone all the way. It's not a stop sign in the rear view mirror, like he testifies to in the deposition, that's back on Plunkett, right? I believe so, Your Honor. Okay. So he came in and says he ran the stop sign at South 26th Avenue before executing a left turn on South 26th, and the gas station's right there. You run the stop sign, I mean, the gas station's right there. That's why it seemed to me, under one version of the facts, he stopped. I don't have a picture, a Google or a map picture of it in front of me, so I can only do this based upon memory and an image that I have in my head. But I take your honor back to the fact of the three separate probable cause events here, the running of a stop sign, the failure to pull over. Except for purposes of this argument, I'm just focused on the second probable cause, the failure to stop. That's the only one I'm talking about right now. Okay, so how under his, when he says he runs the stop sign, the one he identified is the last one on the plunket. And you turn and you're right. Are you following what I'm talking about? Yes, Your Honor. Okay. I looked at it on Google Maps, and it's like that three, if he is running a stop sign in his rearview mirror, then that's enough 176 yards is probably correct on the three blocks on Plunkett Street. I would add one more factor that we haven't discussed. Well, that's not what the officer says. That's not the stop sign he says that night. The officer also says that after he turned his lights on, he saw Mr. Manners go through that last intersection while the light was changing from red to green. So he's really saying, you're saying this stop sign here is the second stop sign he's trying to say. Correct, Your Honor. Okay, but the first stop sign on the arrest report that night, he didn't talk about the first stop sign. Well, I believe that's what he was ticketed for, which was running a stop sign on the first stop. Right, but we've already agreed that the first stop, of running the first stop sign cannot create a foundation for arrest. Right? You don't really dispute that. I agree that there can be a factual dispute. If you accept Manners' account, which we are obliged to do. Right, and I agree, Your Honor. Going back to the second probable cause, and I see I'm way over my time. That's all right. You're helping us understand. There are two components of it, I think, that the court needs to focus on. The first is the absolute obligation to pull over. And the second part, which is at ECF 60, page 14, which is that Mr. Manners drove through the second intersection as the light was turning from red to green. So that is more evidence that there wasn't an immediate, I mean, there's no question that this record establishes that Mr. Manners did not pull over immediately when the lights went on and made no attempt to pull over immediately. How could the officer have even been behind him at that point? I don't understand what you're arguing. This is the second intersection before the gas station. The officer didn't stop. He proceeded down the street. No, he had turned around, Your Honor, and he had done a U-turn. He didn't turn around until after he saw the violation. Isn't that right? The first violation, the first stop sign, Your Honor, there's a second intersection that Mr. Manners goes through before he pulls into the gas station. What did he do, make a 360? Mr. . . . The officer. No, he made a U-turn in the first intersection, Your Honor, not the second intersection. There's an intersection before the gas station. Mr. Manners, Mr. Officer Knell was already behind Mr. Manners with his lights on and says that Mr. Manners went through the intersection before the gas station, after his lights were on, while the light was turning from red to green. And so he not only does he not pull over immediately, he goes to a second intersection, potentially violating a traffic light to pull into his location of choice, which was, again, not immediately in the gas station, but to the second pump that he normally goes to. Candidly, all you've done is confuse me because that just doesn't square with the officer's testimony. And, well, I apologize. It wasn't my intent to confuse you, Your Honor. I'm simply going on what the officer . . . Well, I think I'm factually confused, too. We have to take the evidence in a light that was favorable to the nonmoving party. We have Manners' account, which is one, I didn't go through the stop sign. I stopped. I went forward. There was a cop behind me. He turned on his lights and his siren at some point to pull me over. I didn't pull over until 175 yards, elapsed in 15 seconds, and I went into the gas station. And the reason I didn't stop immediately was because I wanted to go to the gas station. I wanted to film recording it. That's Manners' account, right? Correct, Your Honor. The officer's account is different. The officer's account is the car has stopped here. The officer drives by. He goes through the stop sign. That's the first intersection. Then he sees Manners go through that intersection. His account is that Manners ran the stop sign. By this point, somehow Manners' car got in front of the officer's car, and the officer was behind Manners, at which point the officer turns on his lights, hails him to pull over. He doesn't pull over for 175 yards, and when he does, he goes into the gas station. Is that right? Is that wrong? Am I missing something? I think you fairly characterized it. What I'm struggling with— Under that version, there's no U-turn by the officer. Under that version that you just said you agreed with Judge Marcus, the officer does not make a U-turn. Officer Manners saw Cannella run the stop sign through his rearview mirror. Which means he has to be ahead of him. Correct. The only way the rearview mirror works. Correct. So how does he get behind Manners' car by his account? He turns left after Manners has gone through the first intersection. He's going straight ahead like that. Right. And he makes a left. And then the cop sees him from behind. Correct. Manners makes a left. Correct. The officer is still behind him? I believe so, Your Honor. Well, you just said he was ahead of him. He was ahead of him. The officer was here. Manners is here. Well, okay. I'm trying—not my intention to confuse the court of the facts, okay? My understanding of the facts is that Officer Manners— sorry, Officer Cannella— saw Manners go through the stop sign in his rearview mirror. Which means that he had to be in front of him in order to do that. I don't think— Okay. What I believe is that Officer Manners— I'm looking at a diagram here and I'm trying to unconfuse the court— is that Manners—I'm sorry— Officer Cannella was ahead of him on the other side of the intersection. He didn't do a U— Intersection. Right. He didn't do a U-turn in the intersection. He did a U-turn in the street. After he'd gone through the intersection. Correct. Which is how— I mean, after he saw Manners run the stop sign. Officer Livingston was already— I'm sorry, Officer Livingston. Officer Cannella was already through the intersection. And he sees the other fellow going through the stop sign. And so he does a U-turn, not in the intersection, but in the street. So which is effectively— and forgive me for misstating that— a U-turn in the intersection. But he does a U-turn in the street and then makes his right. Okay, I got it. At that point— That's how the officer gets behind Manners. Correct. He is through the intersection. He makes a U-turn because that's the only way that he can— Because Manners has already gone left. That's the only way that he can get behind Manners, because Manners has already executed a U-turn through the intersection. Manners doesn't dispute that the officer was behind him at some point. No. That the officer put the lights on and that he continued to go forward for 175 yards. Correct. And then pulled into a gas station. Correct. And then the statement also— You just said Manners—he then put the lights on until Manners turns in the intersection. Is that what you're saying? First intersection, Your Honor. Okay? Where the stop sign is. Where the stop sign is that Manners is alleged to have improperly gone through. Here's where, again, help me. Manners goes through the stop sign. By the officer's account, and turns left. The officer is already in front of him on that street, having gone through the intersection, turns around and does a U-turn, and then turns right and gets behind Manners. When does the officer put the lights on? When he's doing the U-turn or when he just gets behind him? He's already now on the street right behind Manners. I believe it is when he is in the street behind him. Okay. I think we've got it. Thank you. We've gone a little bit over. We'll hear from your colleague, Ms. Wendell. Good morning. May it please the court. I'm Laura Wendell, OYSERDA Healthman on behalf of the city. With me is Anne Riley, also of my firm. Your Honors, the court should affirm the final judgment in favor of the city as well as the officers. Manners sued the city for false arrest. Probable cause is a complete bar to an action for false arrest under federal or state law. I was going to come up and explain to you the diagram and the facts, but I think Your Honor understands now what occurred. The reason why the arrest, why there was probable cause for the arrest, focuses, and you've zeroed in on it, focuses on how much time does one- So you concede there wasn't probable cause to arrest him for running the stop sign? Well, there was certainly probable cause to stop him and write him a ticket for running the stop sign. But the problem you have is on summary judgment we have to accept his account, which is he didn't run the stop sign. The facts we face at this point for purposes of discerning qualified immunity are that Mr. Manners did not run that stop sign. The officer was either lying about it or mistaken, but Manners didn't run that stop sign. He stopped. Let's assume that Manners stopped. We have to assume that, don't we? We have to assume that he stopped. That leaves two possibilities, that the officer fabricated the evidence and fabricated- Or he was mistaken. Or he was mistaken. If he was mistaken, he nevertheless put on his lights under this reasonable but mistaken belief. He saw the car through his rearview mirror. It was dark. Assuming for purposes of summary judgment that Manners did stop and the officer nevertheless put on his sirens and lights and Manners admittedly traveled then on 26th Street three blocks to the gas station. Of course. Okay, I'm sorry. Go ahead. What I was going to say, Your Honor, is that the statute doesn't- I thought you were going to tell me about the officer. This is where I have a problem with even the 15 seconds. As I understand it, the officer's testimony is Manners has already made the left turn. The officer's going to make a U-turn, then a right turn, then he's behind Mr. Manners. After he speeds up, I assume, and catches him. That's when he turns on the blue light and the signal. It's not even 15 seconds. It's got to be more like 5 or 10. I can't in my head do the math, but- If the officer turns his lights on- Mr. Manners had already gone some distance. I don't know whether it's half a block, one block, or a block and a half, but he's already gone some distance down that road. The officer took some time to make a U-turn, then a right turn, then get behind him. But I think it's undisputed that there were three blocks and at least- Three blocks from the time the lights went on? I suppose it's three blocks from- the gas station is three blocks from the intersection of 26th and- Manners' account is- he gives different accounts. At the trial, he gave a different account. But his account, I think, is, taking the light most favorable to him, that he went 175 yards, approximately, two and a half blocks. That's 520 feet. 15 seconds after the lights went on. That's his account, correct? He says 15 seconds. Originally- And he says 175 yards. And he says 175 yards. So, the question is, is that a violation? The question is whether or not an officer- situated an objectively reasonable officer under those circumstances could believe that he violated the statute 316.19.35 because he didn't stop the vehicle when he was directed to stop the vehicle by the police. It's as simple as that, right? I think that your Honor is correct. It is as simple as that. But Florida law, the statute, which hasn't been deemed unconstitutional for vagueness, and which doesn't say how long someone can go once the sirens are on, says once the sirens are on and once the lights are on, one has to stop. Can you tell me what you were going to say at the outset? Because I'm not totally clear. Under the officer's testimony, do you agree with your co-counsel that the first stop sign he says Manners ran was the one on Plunkett? My understanding is that the car that Manners was driving was on a swale on Plunkett Street. The officer came from behind and passed him, proceeded through the stop sign at 26th and Plunkett. In his rearview mirror, he saw Mr. Manners' car pull out from the swale, speed up, and make a left-hand turn onto 26th Avenue without stopping at the stop sign. That's what the officer testified. Okay, but 26th Avenue, when he went through the 26th Avenue, that's right at the gas station. 26th and Plunkett is the address of the gas station. Well, then you're looking at a map that I don't have the benefit of because I understood that the gas station that he pulled into was three blocks down 26th Avenue. You believe that he pulled into a gas station that was physically at the corner of Plunkett and 26th? That's what Google Maps shows. I don't know. It shows three blocks, okay, and then when you turn at the end section, the gas station's right there. That's why his own affidavit when he filed this, he said he went travel west on Plunkett Street because when he files this, it's not anything about failure to stop. When I put on the blue lights, he's just saying I went past him and then he didn't stop. But anyway, he says the defendant disobeyed the stop sign at South 26th Avenue before executing a left turn on South 26th. He said he was first on Plunkett when he saw him. He went down Plunkett and he disobeyed the stop sign at South 26th and turned to the left and the gas station's right there. But now we're talking about a stop sign three blocks down on Plunkett, so I don't know. Right. In Mr. Manor's words, he was asked a deposition. We know what Manor says. I'm just trying to say what your own officer said, what he wrote in his arrest affidavit for why he stopped him, you know, why he put him under arrest. Okay. Right, okay. So the issue is did he stop or did he not stop when the lights went on? And it's admitted that he didn't stop. That's what the statute says. That's why he had probable cause to arrest him. If, indeed, he didn't have probable cause to arrest him, would any act of force used by the officer inside the gas station necessarily be excessive as a matter of law under the circumstances of this case? Any use of force to arrest him? They didn't have a basis to arrest him for running the stop sign, because by his account he didn't. And they didn't have a basis for arresting him for flight because let's just assume he stopped promptly. And then they got into a physical altercation. It's a struggle, and we know he falls to the ground, and he's tased a couple of times. Would the force necessarily be excessive as a matter of law if they didn't have a basis to arrest him in the first place? I believe that... I guess what I'm asking is... I believe that we need to know more than... Based on what we know from the film, et cetera, assuming arguendo that they had no basis to stop and arrest him, now we're on the excessive force case. I guess your answer is we're not charged with excessive force. You're asking the wrong person. I think you've got it. You probably are asking the wrong person, Your Honor. I suppose. I'm now looking at the map. I need to correct what I said. The gas station is the corner of 26th and Pembroke. So it is three blocks down. So it is three blocks down from the left. So he goes through the plunk at 26th. Is he seeing that in the rearview mirror? Right. The officer sees it in the rearview mirror because, remember, originally Manor's car was parked on a swale. The officer drove past the car parked on the swale through that stop sign intersection at 26th. And when he was beyond the stop sign, the officer saw in his rearview mirror Manor's then speed up... That's what... The officer's on plunket then when he sees that. He sees it through the rearview mirror. So he turns around and then he has to take a right on 26th. He turns around, takes a right. On 26th. He puts his lights on. There are three blocks traveled then to the gas station. Manor's testified that he slowed down, but he didn't stop. He slowed down because he was concerned about being pulled over and so he slowed down, but he continued to drive three blocks to the gas station, pull into the gas station, not immediately where the gas station opens but beyond the entrance to the gas station, two blocks up to situate himself in front of the camera that then captured the stop and then the altercation. Three blocks are on 26th Street. Yes, yes. And, of course, the three blocks aren't three blocks because you've got to account for the time of making a U-turn, a right turn, and then catching up with a car that had already turned left and was going down the street. That's correct. That's correct. The officer had to quickly turn around, quickly turn around. He was beyond the stop sign. He had to turn around on Plunkett and make a right turn as opposed to Manor's quick left turn where on the quick left turn there's a disputed issue  Let me ask you a question. How many accounts does Manors give of how long it took for him to stop? Is it only one account or does he give more than one? In his deposition he said two minutes. So when he was deposed he said it took him two minutes to stop. And then where did he say 175 yards, 15 seconds? I believe that was in opposition to the motion for summary judgment. But that's a pleading from a lawyer. I'm talking about his account. I thought there came a point where he said 175 yards, 15 seconds. That was his sworn account. That was taken in the likeness. I believe there was an affidavit in opposition to the motion for summary judgment. So that's in his affidavit. Yes. Okay. Thank you. Thanks very much. I didn't mean to cut you off, but we're eight minutes over. You've taken a lot of time, Your Honors. I appreciate it. If there's no further questions, the city respectfully requests that you affirm. Thanks very much. Mr. Locke, let me just ask you one preliminary question at the outset. I had asked it earlier, but I want to be sure that at least I have your position correct. Taking it in the light most favorable to you, Manor's account, his best account to contract the amount of time is the lights went on, the cop car was behind him, and it took him, he stopped his car in compliance 175 yards later, 15 seconds later after the lights went on. That's his account. Is that correct? Yes. And that's in the affidavit submitted in opposition? Yes. And that's actually consistent with what he said in the deposition, too, because he said two minutes at most. Two minutes at most is not two minutes. And he was deposed in this case. Yes. Was there any testimony given in the underlying case, criminal case? In the underlying case, he was originally arrested. He was arrested, charged with this attempted homicide, blah, blah, blah. He was acquitted. Yes. Did he get on the stand and testify about how much time it took? No. Okay. Did he testify in the criminal case? Yes, he did. Oh, okay. All right. So the accounts that we'll get from Mr. Manor's come from two places, from the deposition taken in this case and the affidavit submitted in this case. That is correct. The deposition was taken before he submitted an affidavit? That is correct. Okay. And in the deposition, he said it was at most two minutes. At most two minutes. And in the affidavit, he said it was 175 yards, 15 seconds, from the time the light went on that he saw the light that he pulled over. That's his account. Yes. His account is this is the speed I was going. This is the distance I traveled. Time equals distance divided by speed. For those of us who in the past. That being the case. Yes. Why couldn't an objectively reasonable officer apply this statute and say he failed to comply with the command that he stopped the vehicle? Because criminal responsibility should not attach where one cannot reasonably understand that his contemplated conduct is proscribed. That's the U.S. Supreme Court case of national dairy products. If I can't tell, looking at the statute, that I'm violating the law. Well, why would that follow here? If an officer puts the lights on, it isn't a question that there's a lot of traffic on the street or pedestrians or anything like that. Cop puts on the lights. He says everybody knows that means pull over. He consciously says I'm not pulling over. I'm not pulling over now because I'm worried what you're going to do to me. And so I'm going to go a couple blocks down the street until I can get into a gas station and have film taken of what that encounter is. Why isn't that by one reasonable light? Forget this cop, an objective officer, because that's I think what we have to look at to believe that he violated the statute. I think we have to look at it from the standpoint of any reasonable officer that's an arguable probable cause, but also in a light most favorable to the non-movement that being Livingston Manors. And, and, you know, we talked about 176 yards. I mean, this courtroom was probably a lot less than 170. That's 176 yards. We got almost two football fields. You got 520 feet. Yes. And traveling at 25 miles per hour. His courtroom is from a pitcher's mount to home plate. Yes. And that's probably 95 feet. But you're talking 500 feet, 175 yards. But by his light, he would have gone a thousand feet if the gas station was two, four more blocks down. That's his account, right? He says, I'm went forward. I didn't want to stop because I was afraid that this cop was going to harass me. So I wanted to get into a gas station where there were cameras. So it would record an incident that I was fearful might occur. The reading of the cases suggests, you know, as judge of a race, should all four tires be locked as soon as you turn on the lights? I mean, apparently that's what I'm going to tell my kid when we leave here for copies behind you. No, but we're not talking about, we're not talking about immediately. We're talking about almost 600 feet, three blocks, 14 seconds. And then the question becomes, should criminal responsibility, is it reasonable for an officer to attach criminal responsibility where reading the statute? One cannot contemplate that. I have little doubt. They could, would not be able to satisfy a jury by the standard of beyond a reasonable doubt that there was a willful violation of this statute, but that's not the question. And this is what I want you to help me with because the question is whether an officer would have reason to believe, to believe, not proof beyond a reasonable doubt, not that maybe the statute will be declared unconstitutional next year or next month, but under these circumstances, could an objectively reasonable officer believe that he was not stopping the vehicle when he was directed by the lights going on from stopping the vehicle in a reasonable way that he wasn't entitled to decide for himself, how long it would take to stop the car. He had to stop it. It doesn't mean if he was going 50, he had to hit the brake, but by his own account, he wasn't going 50 and it was an empty street at two 30 in the morning. Could a cop believe that he reasonably believe that he violated three 16, right? Just re that's not even more likely than not. That's not clear and convincing evidence. It's just reasonable suspicion objectively derived. I think that's the question, right? That what do we have to ask? I would have to concede that an officer may believe that. I challenge. However, if a person stopping in 14 seconds, if that if, if a reasonable officer would conclude that he valued that statute. And in fact, it seems to me that if officer Canella had in fact felt that this was a fleeing and alluding case, then of course he would have arrested him for it. Instead of, instead of that, we know that's not what was operating here. We know that was what wasn't in the officer's mind. He is on account as I stopped him for running a stop sign. Yeah. Yeah. The first time we heard playing a little bit is from the lawyers. I thought you might argue today. I don't think you have that there under one version of the fact he didn't execute his turn on his emergency lights. So they got to that intersection at 26 and Pembroke because I'm now reading another portion. I, he said, I overtook the defendant's vehicle at South 26 and Pembroke. Okay. Pembroke is where that I was wrong. When I was talking about Plunkett before Pembroke, he said, I overtook the vehicle at South 26 and Pembroke. I activated my emergency lights to execute a traffic stop. The defendant failed to immediately stop and traveled into the gas station. Now taking the facts and the light and most favorable to the non movement located at Northwest eighth Avenue. So maybe it's not the gas. No, Northwest eighth Avenue right there. I don't know. I mean, that looks like he stopped right at, he didn't activate his lights till he got to the intersection at Pembroke and Plunkett. Yeah. Well, well Pembroke at 26, I'm sorry. Pembroke at 26. Pembroke. Pembroke at 26 is the gas station at Pembroke and 26. Yes, ma'am. Okay. And so taking the, taking the facts, viewing the facts. Your client's facts gives it more time. This officer is like, he's right at the gas station. Is that, I'm just confused. But, but, but taking the facts and all of the facts and the light, most favorable to the non movement. If that is a fact that's even better for my client,  because if he didn't overtake him until the corner of 26 in Pembroke and the gas station is on 26 in Pembroke, then judge pay as you raised could have even been 10 seconds could have even been five seconds. Doesn't seem like he's right there. But then he would have stopped by that light. He stopped as soon as the lights went on. But the problem is you have, he himself says, I didn't do that. And I didn't do it for a very particular purpose. I wanted a lot. I wanted, I wanted to be in the gas station where they had cameras. I understand that your honor. And in fact, a jury may actually make that same fit, reach that same issue. I understand. Thank you very much. Thank you all for your efforts. This court will be adjourned. Thank you.